IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEWITT POWELLS,

        Petitioner,

v.                                                            CIV 05-782 JB/CEG

ERASMO BRAVO, et al.,

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on: (i) Dewitt Powells's ("Petitioner") pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, (ii) Respondents' Answer and motion to dismiss, (iii) the Record Proper from the state proceedings, and (iv) Petitioner's response to the motion to dismiss. *See Docs. 1, 9-10, 11, 13, 17.* [1]  Petitioner was convicted of three counts of forgery for transferring forged writings with intent to injure or defraud in violation of N.M. Stat. Ann. § 30-16-10, as well as one count of conspiracy to commit forgery.[2] *See Ex. A*. He was sentenced to twenty-two years in prison, followed by two years of parole.[3] *Id*. The transfer of the forged writings took place at three retail stores in Las Cruces, New Mexico--K-Mart, Jerry's Perfect Pets, and Phat Glass. *See Trial Transcript* at 57-59, 74-76, 149-151 . The forged writings were counterfeit twenty and one hundred-dollar bills. *Id*.

---

[1] All citations to "Exhibits" are to those attached to Respondents' Answer, which was docketed as Document 11. Citations to the Record Proper are to the bates-stamped numbers, unless otherwise noted.

[2] Pursuant to N.M. Stat. Ann. § 30-28-2.

[3] Petitioner's sentence was enhanced because he was a habitual criminal offender. *See Ex. A* at 2.

In this proceeding, Petitioner asserts four claims: (i) denial of right to speedy trial, (ii) prosecutorial misconduct, (iii) ineffective assistance of counsel, and (iv) actual innocence. *See Doc. 1*. All of the issues can be resolved on the record and, therefore, an evidentiary hearing is unnecessary. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000); *Rule 8(a), Rules Governing Section 2254 Cases In The United States District Courts.* For the reasons below, I recommend that the § 2254 petition be dismissed with prejudice as without merit.

## I.  Procedural Default

Respondents argue in their motion to dismiss that Petitioner's speedy trial claim has been procedurally defaulted.[4]  *See Doc. 10* at 16. In support, Respondents note that although the claim was raised in the appellate docketing statement, it was abandoned because it was not raised in the appellant's brief-in-chief. *Id*. In its Memorandum Opnion, the New Mexico Court of Appeals made no mention of the speedy trial claim.[5]  *See Ex. I*. Petitioner raised the speedy trial claim in his state habeas proceedings and it was denied as "being without merit as a matter of law" and because, although "not directly," it had been considered on appeal. *See Ex. N* at 2. The New

---

[4] In their motion to dismiss, Respondents also contend that two claims falling under ineffective assistance of counsel are unexhausted. *See Doc. 10* at 4. I agree. However, I also agree with Respondents' contention that despite Petitioner's failure to exhaust, the Court can deny these claims on their merits. *Id.; see 28 U.S.C.* § 2254(b)(2). Because I find Petitioner's unexhausted claims to be without merit, I will address them below. *See Granberry v. Greer*, 481 U.S. 129, 135 (1987),

[5] The New Mexico Supreme Court did not either. In its entirety, the New Mexico Supreme Court decision states:
> This matter coming on for consideration by the court upon petition for writ of certiorari, and the Court having considered said petition and response, and being sufficiently advised, Chief Justice Petra Jimenaz Maes, Justice Pamela B. Minzner, Justice Patricio M. Serna, Justice Richard C. Bosson, and Justice Edward L. Chavez concurring; Now, Therefore, It is Ordered that the petition for writ of certiorari is denied in Court of Appeal number 23834.

*Ex K*.

2

Mexico Supreme Court denied Petitioner's writ of certiorari in a summary dismissal. *See Ex. P*.

A federal habeas court cannot entertain issues that were defaulted in state court based on an "independent and adequate" procedural ground, unless the petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice. *E.g. Dretke v. Haley*, 541 U.S. 386, 388 (2004). However, for a procedural rule to constitute an "independent" ground for federal habeas purposes the state courts must enforce the default. Procedural default principles simply do not apply where, as here, there is not a state decision that "clearly and expressly" relied on a procedural default. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Ylst v. Nunnemaker*, 501 U.S. 797, 803-804 (1991). In denying Petitioner's writ of certiorari and habeas petition, the New Mexico Supreme Court decision did not rely on a procedural bar. Judge Bridgeforth's Order Denying Petition for Writ of Habeas Corpus and the New Mexico Court of Appeals' Memorandum Opinion did not either. *See Exs. I, N*. I find, therefore, that this case presents no procedural default bar to habeas review and that Petitioner "fairly presented" his federal claims in state court.[6]

## II. Standard of Review

When a state court "adjudicates" the claim at issue on the merits, rather than disposing of a claim on a procedural ground, a federal court cannot grant a writ of habeas corpus unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[6] *See, e.g., Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court, thereby alerting that court to the federal nature of the claim").

>  (2) resulted in a decision that was based on an unreasonable
>  determination of the facts in light of the evidence presented in the
>  State court proceeding.

28 U.S.C. §§ 2254(d)(1)-(2); *see e.g.*, *Parker v. Scott*, 394 F.3d 1302, 1308-09 (10th Cir. 2005); *Saiz v. Ortiz*, 392 F.3d 1166, 1176 (10th Cir. 2004), *cert. denied,* 125 S. Ct. 2976 (2005).[7]

The phrase "clearly established federal law, as determined by the Supreme Court of the United States" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta" of the Supreme Court that set forth "the governing legal principle or principles . . . at the time the state court renders its decision." *Yarborough v. Alvarado,* 541 U.S. 652, 660-661 (2004) (internal quotations and citations omitted). "A state-court decision is contrary to [the Supreme] Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result." *Brown v. Payton,* 544 U.S. 133, 141 (2005) (internal citations omitted).

A state decision is not deemed "contrary to" just because it fails to cite Supreme Court opinions, is unaware of Supreme Court precedent, or fails to address a claim or provide any reasoning for its decision. Rather, the focus is whether the reasoning or the result of the state court decision is either contrary to established precedent as defined above, or an unreasonable application thereof. *E.g., Mitchell,* 540 U.S. at 16; *Early,* 537 U.S. at 8; *Saiz,* 392 F.3d at 1176;

---

[7] The Court concludes that all of Petitioner's claims have been "adjudicated" by the state court. *See Exs. I, K, N, P*. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") standards apply to the most summary of dispositions. *E.g., Mitchell v. Esparza,* 540 U.S. 12, 15-16 (2003); *Early v. Packer,* 537 U.S. 3, 8 (2002); *Saiz,* 392 F.3d at 1176; *Gipson v. Jordan,* 376 F.3d 1193, 1196-97 (10th Cir. 2004), *petition for cert. filed 3/14/05*. Thus, even though some of Petitioner's claims were dismissed summarily, the AEDPA deferential standards apply to all the claims before the Court.

*Gipson,* 376 F.3d at 1196-97.

"A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown,* 544 U.S. at 141. However, "it is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court" applied "clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade,* 538 U.S. 63, 75-76 (2003) (internal quotations and citations omitted). "Rather, that application must be objectively unreasonable." *Id.* at 76.[8]

Under § 2254(d)(2), a state decision rests on an "unreasonable determination of the facts" where Petitioner shows by "clear and convincing evidence" that the factual finding is erroneous. Otherwise, the factual findings are presumed correct. *E.g., Miller-El v. Dretke,* 545 U.S. 231, 240 (2005); 28 U.S.C. § 2254(e)(2).

If application of the above standards does not foreclose further review and discussion by the federal court, habeas relief nonetheless cannot issue absent a finding of a constitutional violation sufficient to warrant such relief.[9]

---

[8] The term 'unreasonable' is 'a common term in the legal world and, accordingly, federal judges are familiar with its meaning.' . . . At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

*Yarborough,* 541 U.S. at 664.

[9] *See, e.g., Turrentine v. Mullin,* 390 F.3d 1181, 1189-90 (10th Cir. 2004), *cert. denied,* 125 S. Ct. 2544 (2005); *Brown v. Uphoff,* 381 F.3d 1219, 1225 (10th Cir. 2004), *cert. denied sub nom,* 125 S. Ct. 940 (2005);

## III.  Speedy Trial

Petitioner asserts that his Sixth Amendment right to a speedy trial was violated because his trial did not occur until nineteen months after he was arrested.[10]  The Supreme Court has adopted a balancing test for determining if the right to a speedy trial has been violated.  *See Barker v. Wingo*, 407 U.S. 514, 530 (1972).  Under *Barker*, the defendant's conduct is weighed against the prosecution's conduct.  *Id*.  The four factors to be considered when applying the balancing test are: (i) length of delay, (ii) reason for the delay, (iii) whether the defendant asserts his right to a speedy trial or acquiesces in the delay, and (iv) prejudice to the defendant.  *Id*.  None of these factors, standing alone, is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant."  *Id*. at 533.

As discussed above, the speedy trial claim was not argued before the New Mexico Court of Appeals and was summarily denied by Judge Bridgeforth in the state habeas proceedings.  As also explained above, deference to such a state court decision is still given even though reasoning is not supplied.  *See Aycox v. Lytle*, 196 F.3d 1174, 1177-1779 (10th Cir. 1999).[11]  On the day of Petitioner's trial, however, Judge Bridgeforth did hold a hearing on Defendant's Motion to Dismiss Based on Speedy Trial Violations.  *See Trial Transcript* at 5; *Record Proper* at 107.  At the hearing, both parties made arguments citing the *Barker* factors, and in denying the motion,

---

*Aleman v. Sternes,* 320 F.3d 687, 690 (7th Cir.), *cert. denied,* 539 U.S. 960 (2003); *Herrera v. Lemaster,* 301 F.3d 1192, 1199 (10th Cir. 2002), *cert. denied,* 537 U.S. 1197 (2003).

[10] Petitioner was arrested on October 6, 2000.  His trial date was May 21, 2002.  *See Ex. D* at 2; *Record Proper* at 107; *see also Trial Transcript*.

[11] However, even if I were to review this claim *de novo*, my findings would be unchanged.

6

Judge Bridgeforth's bench ruling inferred that he applied the *Barker* factors.[12] *See Trial Transcript* at 6-11; *see also Record Proper* at 110-112. Judge Bridgeforth, however, only specifically commented on the second *Barker* factor--reason for delay. *See Trial Transcript* at 11-12. Because Judge Bridgeforth's ruling on the motion to dismiss is the last explained state court decision regarding the speedy trial claim, the Court will review its analysis.[13] *C.f. Ylst,* 501 U.S. at 805. For the reasons below, the Court finds that the state court decision is not "contrary to" or "unreasonable" under the applicable standard of review.

A. *Length of Delay*

Length of delay triggers whether the inquiry goes on to consider and balance the other factors. *See Barker*, 407 U.S. at 530. The other factors are only considered and balanced when the length of the delay is "uncommonly long," or "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 651-652 (1992). While there is no bright line test, lower courts have generally held that a length of delay that approaches one year is presumptively prejudicial. *Id*. at 652 n.1.[14] The Court concludes Petitioner's nineteen month delay is presumptively prejudicial and

---

[12]
> THE COURT: Mr Arreita, this is on your motion to dismiss. I've read your motion. I'd like to hear whatever else you might want to add to it. . . .
> MR. RIEDEL: Judge, in order to be successful in a speedy trial motion, the State has to establish that they meet the four Barker v. Wingo standards. . . .
> THE COURT: Well, the Court finds that there is no violation of the right to speedy trial. . . . So I think all the *factors* are mitigating in favor of denying the motion. (emphasis added)

*Trial Transcript* at 5, 10, 11-12.

[13] In addition, Judge Bridgeforth's ruling on the motion to dismiss provides reasoning to his earlier summary dismissal in the state habeas proceedings.

[14] The general rule is that the speedy trial right attaches when the defendant is arrested or indicted, whichever comes first. *See United States v. Marion*, 404 U.S. 307, 320-321 (1971).

7

sufficient to require consideration of the other remaining *Barker* factors.[15]

The second part of the inquiry under length of delay is the extent to which the delay stretches beyond the minimum needed to trigger judicial examination of the claim. *See Doggett*, 505 U.S. at 652. The record reveals that Petitioner's forgery and conspiracy charges did not present any complex issues. *See e.g.*, *Trial Transcript* at 19-23. Because of the simplicity of Petitioner's charges, the Court finds that nineteen months exceeds the bare minimum for judicial examination. *See United States v. Yehling*, 456 F.3d 1236, 1244 (10th Cir. 2006). As such, this factor is weighed moderately in Petitioner's favor.

## B. *Reason for Delay*

The burden under the reason for delay factor is on the state to provide an inculpable explanation for delays. *See Barker*, 407 U.S. at 530. Continuances and other motions filed by the defendant do not weigh against the government. *See United States v. Tranakos*, 911 F.2d 1422, 1428 (10th Cir.1990); *see also United States v. Dirden* 38 F.3d 1131, 1138 (10th Cir. 1994) (delays attributable to the defendant do not weigh against the government). In deciding the motion to dismiss, Judge Bridgeforth concluded that the State had met its burden. He noted that "actually, every one of these continuances is from the defense, or defense counsel." *Trial Transcript* at 11. As such, Judge Bridgeforth weighed the reason for delay factor heavily against the Petitioner. A review of the record, clearly supports his findings.

Originally, the trial was set for May 25, 2001. Petitioner's attorney, Stephen Ryan, moved to continue the trial because he was scheduled for eye surgery on that date. *See Record Proper* at

---

[15] By considering the other *Barker* factors, the state court ruling implies that it concluded that the length of delay was presumptively prejudicial. To that extent, the Court agrees with its findings.

8

64.  Trial was then reset for August 21, 2001.  *See Record Proper* at 71.  On August 20, 2001, the trial was pushed back an additional ten days because Petitioner had failed to keep in contact with his attorney while released on bond.  *See Record Proper* at 72-78*; Trial Transcript* at 8.  Three days before the August 30, 2001 trial date, Stephen Ryan discovered that in 1992 Petitioner had been convicted of having criminal sexual contact with his stepdaughter.  *Id.* at  79.  Consequently, he filed a motion to withdraw which was granted and trial was again pushed back, this time to December 19, 2001.  *Id.* at 81, 84.  Steve Sage entered his appearance on October 11, 2001.  *Id*. at 85.

Steve Sage began negotiating a change of plea for Petitioner.  *See Trial Transcript* at 9; *Tape, Motion to Withdraw Hearing, 2-19-2002*.  Two days before trial Petitioner changed his mind and decided against changing his plea.  *Id*.  As a result, trial was postponed until February 21, 2002.  *Id*.  On February 15, 2002, Steve Sage moved to withdraw citing a complete break down of the attorney-client relationship "to the extent that the ends of the attorney-client relationship have been irretrievably injured and irreconcilably broken."  *Record Proper* at 93.  Because the state opposed the motion, a hearing was held on February 19, 2002.

At the motion to withdraw hearing, Judge Bridgeforth explained to the parties that he "did not want to vacate this trial date." *Tape, Motion to Withdraw Hearing, 2-19-2002*.  Steve Sage acknowledged the timing problems his motion presented but nonetheless stated that he did not feel he could adequately represent the defendant.  *Id*.  Judge Bridgeforth informed Petitioner that granting the motion meant pushing the trial date back once again, causing him to spend additional time in jail waiting for his trial.  *Id*.  Petitioner stated that he understood and that he wanted his attorney to withdraw.  *Id.*  The motion was granted, and trial was reset for May 21, 2002.  No

other delays occurred.

"We find little merit in defendant's assertion of his Sixth Amendment right to a speedy trial . . . when the defendant has sat on his hands for seven months and requested several continuances of his own." *United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006). The record above clearly demonstrates that Petitioner or his counsel was at fault for every delay. Accordingly, this *Barker* factor is weighed heavily against the Petitioner.

*C. Assertion of the Right to a Speedy Trial*

The third factor assesses whether a defendant asserted his right to adjudication without unreasonable delay.[16] *See Barker*, 407 U.S. at 528. In general, the sooner a criminal defendant raises the speedy trial issue, the more weight this factor lends to his claim. *Id.* at 534-535. Here, Petitioner asserted his right to adjudication one day before trial. *See Record Proper* at 107.

The defendant's assertion of speedy trial "must be viewed in the light of their other conduct." *United States v. Loud Hawk*, 474 U.S. 302, 314-315 (1986); *see also Barker*, 407 U.S. at 534-535 ("record strongly suggests that while [defendant] hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried"). The Court is "unimpressed" by Petitioner's speedy trial assertion when "his other conduct indicates a contrary desire." *Tranakos*, 911 F.2d at 1429. While Petitioner did assert his right to speedy trial, we note that the timing of his assertion in light of his conduct represents unreasonable delay.[17] As such, the Court also weighs this factor against the Petitioner.

---

[16] The state court did not specifically comment on this factor.

[17] Petitioner's conduct includes: (i) after months of negotiations, deciding against entering a plea two days before the December trial setting, (ii) failing to keep in contact with his attorney while released on bond, and (iii) requesting that his third attorney withdraw.

*D. Prejudice*

The fourth *Barker* factor can be met two ways: "with or without a particular showing of prejudice."[18]  *See Jackson v. Ray*, 390 F.3d 1254, 1263 (10th Cir. 2004).  In cases of extreme delay, a particular showing of prejudice is not required.  *See Doggett*, 505 U.S. at 655.  This is not one of those situations.[19]  *Id.*  Therefore, the burden of demonstrating a particular showing of prejudice lies with the individual claiming the speedy trial violation.  *See Jackson,* 390 F.3d at 1264.

In assessing whether the Petitioner made a particularized showing of prejudice, the three interests that the speedy trial right was designed to protect are considered: (i) prevention of oppressive pretrial incarceration, (ii) minimization of the accused's anxiety and concern, and (iii) minimization of the possibility that a delay will hinder the defense.  *See Barker*, 407 U.S. at 532.  The most important interest is the third one--impairment of defense.  *Id*.

Here, "even if we construe [Petitioner's] pro se briefing liberally," he does not raise the issues of oppressive pretrial detention, increased anxiety, or impairment of defense.  *Jackson*, 390 F.3d at 1264; *see Doc. 1* at 9-9(a)(2).  Petitioner does not point out any defense witnesses who were unable to recall accurately events of the distant past.  *See Tranakos*, 911 F.2d at 1429.  In fact, at trial, no witnesses were called on his behalf.  *See Trial Transcript* at 2-4.  If anything, as to the impairment of defense issue, the delay worked in Petitioner's favor.  *See Barker*, 407 U.S. at 521.

Accordingly, the prejudice factor weighs against Petitioner.  I find that the record presents

---

[18] The state court did not specifically comment on this factor.

[19] For example, as in *Doggett,* an eight year delay.  *See* 505 U.S. at 655.

no other circumstances to consider, and, on balance, all of the factors discussed above weigh in favor of finding no speedy trial violation. Thus, I recommend that this claim be dismissed.

## IV.  Prosecutorial Misconduct

Petitioner also seeks relief based on alleged prosecutorial misconduct.[20] He contends that at trial, as well as at the grand jury indictment, the prosecutor did not present the correct charges and explain the correct elements of the charges. He argues that the prosecutor "utilized a federal statue [sic] and gave it a state statue [sic] name." *Doc 1*. at 7.

When a petitioner asserts a claim of prosecutorial misconduct in a habeas petition, the claim is reviewed only for a violation of due process. *See Hamilton v. Mullin*, 436 F.3d 1181, 1187 (10th Cir. 2006). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974). In order to be entitled to relief, a petitioner must establish that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. at 643. This Court may only make such a determination after "tak[ing] notice of all the surrounding circumstances, including the strength of the state's case." *Coleman v. Brown*, 802 F.2d 1227, 1237 (10th Cir. 1986).

A review of the record demonstrates that Petitioner's claim is factually incorrect. At the grand jury proceedings, the grand jury was presented with the elements of the state forgery statute, N.M. Stat. Ann. § 30-16-10, and not the elements of the federal statute for counterfeiting,

---

[20] The state court summarily dismissed this claim. *See Ex. N* at 2. Such dismissals are given deference under AEDPA. However, even if my review were *de novo*, my findings would be unchanged.

42 U.S.C. § 472.[21]  *See Tape, Grand Jury Proceedings, 11-9-2000*.  Likewise, at trial, the prosecutor also presented the jury with the elements of the state forgery statute.  *See Trial Transcript* at 19, 23, 237-238, 241-258.  The prosecutor did not make any reference to the federal counterfeiting statute.  *Id*.  Accordingly, Petitioner's claim is without merit and should be dismissed.

To the extent that Petitioner is claiming, as he did on appeal, that the State incorrectly utilized the state forgery statute for passing counterfeit currency, instead of, for example, a negotiable instrument, the Court finds that the state court decision is not "contrary to" or "unreasonable" under the applicable standard of review.  The New Mexico Court of Appeals held that "nothing of which we are aware, and nothing that Defendant cites suggests, much less requires, that the State refrain from prosecuting the passing of counterfeit currency under the forgery statute or that the courts of this State refrain from exercising jurisdiction over the prosecution for forgery of counterfeit currency."  *Ex. I* at 5.  The New Mexico Court of Appeals ultimately concluded that Petitioner's argument was "unsupported by any authority."  *Id*.  In these proceedings, Petitioner has not cited to any case law which even remotely implies that the State could not prosecute an individual for passing counterfeit currency under the forgery statute.  *See*

---

[21] Petitioner was convicted under N.M. Stat. Ann. § 30-16-10(A):
> A. Forgery consists of:
> (1) falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud; or
> (2) knowingly issuing or transferring a forged writing with intent to injure or defraud.

The Petitioner claims that the prosecutor utilized the federal counterfeiting statute, 42 U.S.C. § 472:
> Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined under this title or imprisoned not more than 20 years, or both.

*Doc. 1* at 7-7(a)(3). Nor has this Court found, after a thorough review, any case law that indicates that a state should refrain from such a prosecution. As such, this portion of the claim should also be dismissed.

## V.  Ineffective Assistance Of Counsel

To establish ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test.[22] First, he must show that counsel's performance fell below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential; thus, the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. To be constitutionally ineffective, counsel's conduct "must have been completely unreasonable, not merely wrong." *Moore v. Gibson*, 195 F.3d 1152, 1178 (10th Cir. 1999)*, cert. denied,* 120 S. Ct. 2206 (2000); *see also Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999). Second, the petitioner must show he has been prejudiced; that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. Conclusory assertions are insufficient to establish ineffective assistance. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). Because this test is two pronged, if either prong is not met, it is unnecessary to discuss the other. *E.g., Hill v. Lockhart*, 474 U.S. 52, 60 (1985).

In support of his ineffectiveness claim, Petitioner alleges that: (i) counsel failed to object to hearsay testimony presented to the grand jury, (ii) counsel failed to incorporate all of

---

[22] Ineffective assistance of counsel is a mixed question of law and fact under the AEDPA standards. *See Battenfield v. Gibson,* 236 F.3d 1215, 1236 (10th Cir. 2001).

Petitioner's issues into the docketing statement on direct appeal, (iii) he was given five attorneys over a two year period, and (iv) counsel failed to file a motion to suppress evidence. For convenience, I will analyze these allegations separately below.

*A. Failure to Object to Hearsay Testimony Presented to the Grand Jury*

The Supreme Court has declined to enforce the hearsay rule in grand jury proceedings because that "would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules." *Costello v. United States*, 350 U.S. 359, 364. (1956). The law in the State of New Mexico concurs: "the Rules of Evidence shall not apply to a grand jury proceeding." N.M. Stat. Ann. § 31-6-11; *see also Buzbee v, Donelly*, 634 P.2d 1244, 1249-1250 (N.M. 1981). Even if, then, Petitioner's counsel would have attempted to quash the indictment on hearsay grounds, such a motion would not have been successful. Counsel cannot be deemed ineffective for failing to raise a meritless issue. *See United States v. Dixon*, 1 F.3d 1080, 1083 n.5 (10th Cir. 1993), *abrogated on other grounds by Florida v. White*, 526 U.S. 559 (1999); *United States v. Cook*, 45 F.3d 388, 393 (10th Cir. 1995). As such, Petitioner cannot argue that his counsel's performance fell below an objective standard of reasonableness or that he was prejudiced.

*B. Failure to Incorporate All of Petitioner's Issues Into the Docketing Statement[23]*

Petitioner alleges that "even after [Petitioner] gave instructions to counsel . . . to present issue's [sic] in his direct appeal, [they] were left out of the docket statement . . . " *Doc. 1* at 6(a)(2). The Petitioner makes no other statement regarding this allegation in his petition or his

---

[23] This claim has not been exhausted. However, despite Petitioner's failure to exhaust, the Court can deny the claim on the merits. S*ee 28 U.S.C.* § 2254(b)(2).

15

response to the motion to dismiss.  Just above the nine issues presented on appeal, the docketing statement notes: "these are all the issues defendant wants raised as stated in his correspondence under *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967)."  *Ex. D* at 8-9.  The Court does not have copies of such correspondence and cannot determine from the record whether counsel failed to present certain issues in the docketing statement.

Even assuming, however, that counsel failed to include certain issues in the docketing statement, and that such a failure falls below an objective standard of reasonableness, the Petitioner cannot satisfy the prejudice prong under *Strickland*.  In his § 2254 petition, he does not even indicate what issues his counsel allegedly left out of the docketing statement.  *See Doc. 1* at 6(a)(2).  Thus, he utterly fails to suggest how, but for counsel's alleged error, the outcome of his case would have been different.  Accordingly, this claim should also be dismissed.

C.  *Given Five Attorneys Over a Two Year Period*

Part of Petitioner's ineffectiveness claim rests solely on the number of attorneys that represented him.  *See Doc. 1* at 6, 6(a)(3).  In making this allegation, Petitioner does not provide any factual support whatsoever as to how the number of attorneys who represented him led to him receiving ineffective assistance of counsel.[24]  Conclusory assertions are insufficient to establish ineffective assistance.  *See Fisher*, 38 F.3d at 1147; *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991) (holding that even pro se plaintiffs must allege sufficient facts on which a

---

[24] The only specific factual support that Petitioner provides regarding this claim is: "had the court ordered or prevented counsel changes the outcome would have been different."  *Doc. 1* at 6(a)(3).  Such a factual allegation does not support an ineffective assistance of counsel claim.  *See Strickland*, 466 U.S. at 687-88.
    Even so, however, the record demonstrates that the trial court rulings allowing Petitioner's attorneys to withdraw were warranted.  Petitioner's first attorney was allowed to withdraw because of disciplinary reasons.  *See Record Proper* at 55.  Petitioner's second attorney was allowed to withdraw because Petitioner had been convicted of criminal sexual contact, in which the victim was the attorney's stepdaughter.  *Id*. at 79.  And, as discussed above, Petitioner wanted his third attorney to withdraw.  *See Tape, Motion to Withdraw Hearing, 2-19-2002*.

recognized legal claim can be based, and that conclusory allegations will not suffice).  The Court finds this allegation to be conclusory.  Therefore, this claim should be dismissed.

D. *Failure to File a Motion to Suppress Evidence*[25]

In his last claim, Petitioner alleges his counsel was ineffective because he did not file a motion "to suppress evidence of a charge of forgery where no forgery has been committed . . ." *See Doc. 13* at 1; *see also Doc. 1* at 6(a)(1).  Petitioner, however, does not indicate what specific evidence should be suppressed or provide any reasoning for why such evidence should be suppressed.  For these reasons his allegation is, again, conclusory and the Court has no basis on which to conclude that counsel's failure to move for suppression was objectively unreasonable or whether a failure to do so prejudiced Petitioner.  *See e.g., United States v. Young*, 862 F.2d 815, 820-21 (10th Cir.1988) (declining to consider ineffective assistance of counsel claim based on counsel's failure to file motion to suppress where defendant failed to include affidavit and search warrant in record on appeal).[26]  Accordingly, the Court recommends that this claim be dismissed.

## VI.  Actual Innocence

To qualify for the "actual innocence" exception, Petitioner must provide evidence of a "fundamental miscarriage of justice," meaning that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478,

---

[25] This claim has not been exhausted.  However, despite Petitioner's failure to exhaust, the Court can deny the claim on the merits.  S*ee 28 U.S.C.* § 2254(b)(2).

[26] While the Court will not speculate as to what evidence Petitioner suggests should be suppressed, it notes that having reviewed the trial transcript, it sees nothing that would result in a finding of ineffectiveness for failing to file a motion to suppress.  More specifically, regarding the search of Petitioner's trailer subsequent to his arrest (which happened in front of his trailer), Petitioner consented to a search of his residence.  *See Trial Transcript* at 130-131.  Regarding his statement to police, after being read the *Miranda* rule, Petitioner voluntarily gave a statement regarding his roll in the counterfeiting conspiracy.  *Id*. at 164.

495-96 (1986). Petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). He bears the burden to present new evidence so persuasive that "more likely than not no reasonable juror would have found Petitioner guilty beyond a reasonable doubt." *House v. Bell*, ___U.S. ___, 126 S.Ct. 2064, 2077 (2006). As such, fundamental miscarriages of justice are "extremely rare." *Schlup*, 513 U.S. at 324.

In the state habeas proceedings, Judge Bridgeforth determined that Petitioner did "not give any basis" for his actual innocence claim. *Ex. N* at 2. The Court finds that the state court decision is not "contrary to" or "unreasonable" under the applicable standard of review. In these proceedings Petitioner has not supported his actual innocence claim with any new reliable evidence that was not presented at trial. *See Schlup*, 513 U.S. at 324; *Doc. 1* at 10-11. Petitioner's claim is without merit and I recommend that it be dismissed.

Wherefore,

IT IS HEREBY RECOMMENDED THAT:

1)   Respondents' motion to dismiss (*Doc. 9*) be granted;

2)   the petition for writ of habeas corpus under 28 U.S.C. § 2254 be denied; and

3)   this cause be dismissed with prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE